UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-81271-CV-HURLEY/HOPKINS

PEACOCK MEDICAL LAB, LLC,
PBL MEDICAL, LLC, and LAKE
DRIVE MEDICAL, LLC,

    Plaintiffs,

v.

UNITEDHEALTH GROUP, INC.,
UNITED HEALTH CARE SERVICES,
INC., OPTUMINSIGHT, INC., and
OPTUMHEALTH, INC.,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**THIS CAUSE** comes before the Court upon Defendants UnitedHealth Group, Inc., United Healthcare Services, Inc., OptumInsight, Inc., and OptumHealth, Inc.'s Motion to Dismiss Plaintiffs Peacock Medical Lab, LLC, PBL Medical Lab, LLC, and Lake Drive Medical Lab, LLC's Amended Complaint [ECF No. 27].

This Complaint involves two years, three laboratories, 132 substance abuse patients, and $2,000,000 in unpaid claims. On average, the laboratories claim at least $15,000 for services provided to each patient. The services were urine tests, and the insurance companies have refused to pay.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## **BACKGROUND**

Plaintiffs are Peacock Medical Lab, LLC; PBL Medical, LLC; and Lake Drive Medical, LLC, collectively "the Laboratories." 1st Am. Comp. ¶¶ 11–14. Each Laboratory is a Florida LLC located in Palm Beach County, Florida. *Id.* ¶¶ 11–13.

The Laboratories are "affiliates" of Titan Healthcare, doing business as Ambrosia Treatment Center, located in Port St. Lucie, Florida. *Id.* ¶ 14. The Laboratories have no "parent corporation." *See* Pls.' Corporate Disclosure Statement.

Defendants are UnitedHealth Group, Inc. and United Healthcare Services, Inc. (collectively, "United"); and OptumInsight, Inc., and OptumHealth, Inc. (collectively, "Optum"). Located in Minnesota, Defendants administer and provide health insurance coverage. 1st Am. Comp. ¶¶ 16–21

There are 132 patients at issue in this case. *Id.* ¶ 2. Each of these patients is insured by Defendants or plans administered by them. *Id.* ¶¶ 21–22. From 2013 to 2014, each patient was treated by the Laboratories. *Id.* ¶ 24. The Laboratories are health care providers that provide medical services to substance abuse patients, specifically, drug screening urinalysis. *Id.* ¶¶ 3, 15.

Before receiving services from the Laboratories, the patients executed both a "Patient Assignment of Benefits and Financial Agreement" and a "Durable Power of Attorney." *Id.* ¶ 28.

The Assignment of Benefits reads as follows:

> I hereby authorize and request that payment of authorized insurance company benefits be made on my behalf to [sic] directly to Ambrosia Treatment Center for the amount due to me for any medical or psychological/psychiatric treatment or services that are rendered to me by Ambrosia Treatment Center.

*Id.* ¶ 28.

The Durable Power of Attorney reads as follows:

> I [insert patient name] hereby make, constitute and appoint **Ambrosia Treatment Center** [m]y true and lawful attorney-in-fact to act severally in my name, place and stead to do and perform all and every act and thing whatsoever requisite and necessary in any way which I could or might do, if personally present, **with respect to obtaining payment end/ or [sic] reimbursement** for hospital, medical, chemical dependency treatment and other health care **services rendered to the Principal by Ambrosia Treatment Center** whose address is 546 NW University Blvd., Suite 103, Port St. Lucie, FL 34986 **and any of its affiliates**, including, but not limited to obtaining insurance, making of claims against insurers, or other third-party payers[,] [i]nstituting and prosecuting and/or defending litigation, arbitration and/or other dispute resolution proceedings, compromise and/or statement of claims and/or disputes, obtaining and/or releasing records, reports and statements, including but not limited to any and all medical reports from prior treatment providers, subject to complying with federal confidentiality rules under 42 CFR Part 2, as well as all other acts which may be helpful and appropriate to the accomplishment of such purposes, for the ultimate objective of Ambrosia Treatment Center collection for such services.

Durable Power of Attorney, 1st Am. Comp., Ex. [ECF No. 26-3] (emphasis added).

And, further on:

> Each of my said **attorneys shall have full and unqualified authority to my attorney(s)-in-fact to delegate any or all of the foregoing powers** to any person or persons whom my attorney(s)-in-fact-shall select, to the maximum extent from time not forbidden by law.

*Id.* (emphasis added).

Before providing services to each patient, the Laboratories "verified the existence of coverage" with Defendants. 1st Am. Comp. ¶ 31. Defendants "confirmed coverage and that Plaintiffs Claims would be paid when timely submitted." *Id.*

The Laboratories filed claims with Defendants for the services provided to the patients. *Id.* ¶ 24. Some of the claims were paid, but others were delayed or denied. *Id.* ¶ 32. The delays were prolonged, and the reasons for denials shifted. *Id.* Sometimes when denying claims Defendants provided no more explanation than "misrepresentation of services." *Id.* ¶¶ 45–46.

On February 5, 2015, the Laboratories filed their First Amended Complaint, alleging seven counts against Defendants. Counts I–IV claim violations of the Employee Retirement Income Security Act of 1974 (ERISA). Count V and VI claim breach of contract and breach of implied contract. Count VII claims promissory estoppel. They seek $2,000,000 in unpaid claims. *Id.* ¶ 28.

## DISCUSSION

**A.    COUNTS I-IV: ERISA VIOLATIONS**

The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. ch. 18, regulates employer health insurance plans. ERISA provides beneficiaries a statutory cause of action to enforce their health insurance plan.[1] ERISA also provides beneficiaries a statutory

---

[1] *See* 29 U.S.C. § 1132(a)(1)(b) (providing "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").

cause of action to enforce its claim review and information disclosure requirements.[2]

The Laboratories claim that Defendant violated ERISA by denying, and failing to provide the criteria used in denying their claims (Count I), by failing to provide full and a fair review of their denied claims (Count II), by breaching their fiduciary duties (Count III), and by failing to provide requested plan documents (Count IV).

Because neither the Assignment of Benefits nor the Power of Attorney provide the Laboratories standing to bring their ERISA claims, Counts I–IV will be dismissed with prejudice.

### 1.    THE DOCUMENTS

First, the Assignment of Benefits does not confer standing upon the Laboratories. The Assignment assigns only Ambrosia Treatment Center the right to receive benefits. It does not assign this right to the Laboratories. Even if it did, the Assignment would confer but limited standing. As the Eleventh Circuit has held, an assignment that authorizes a provider to receive benefits on a patient's behalf "assigns only the right to receive benefits and not the right to assert claims for breach of fiduciary duty or civil penalties" under ERISA.[3]  Pursuant to the

---

[2] *See* 29 U.S.C. § 1132(a)(1)(A), (c)(1) ("[a] civil action may be brought . . . by a participant or beneficiary" against "[a]ny administrator . . . "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary  . . . . may be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.").

[3] *See Sanctuary Surgical Centre, Inc. v. Aetna, Inc.,* 546 Fed. App'x 846 (11th Cir. 2013) (holding that a medical care provider's agreements with its patients, authorizing insurance benefits to be paid directly to the provider, assigned only the right to receive benefits, and not the right to assert claims for breach of fiduciary duty or civil penalties, and would not confer

Assignment of Benefits, only Ambrosia Treatment Center has standing, and only to bring ERISA claims for benefits. The affiliate Laboratories do not.[4]

Nor does the Power of Attorney confer standing upon the Laboratories. As Judges Cohn, Marra, and Huck have held, "a power of attorney is insufficient to give a plaintiff standing to pursue an action in his or her own name." [5] Therefore, the Power of Attorney authorizing Ambrosia Treatment Center to sue on behalf of the patients does not confer standing upon Ambrosia. It especially does not confer standing upon the unmentioned Laboratories.

### 3. HAFFEY AFFIDAVIT

Recognizing their defective pleading, the Laboratories attach to their Response an affidavit from Ambrosia Treatment Center's Manager, Jerry Haffey, Sr. Affidavit of Jerry

---

derivative standing upon the providers to pursue those claims against the insurance plan administrator under ERISA).

[4] An "affiliate" can be many things, and cases have been decided based upon its definition. *See Churchville v. GACS Inc.*, 973 So. 2d 1212, 1215 (Fla. 1st DCA 2008) (Wolf, J.) (concluding that "'affiliates' are neither subsidiaries nor parent companies"); *id.* at 1217 (Van Nortwick, J., concurring) (concluding that an affiliate is an entity "under common control"); *id.* at 1218 (Browning, J., dissenting) (arguing that affiliate means "subsidiary"). An affiliate can be a parent, or it can be a subsidiary. For example, under the Florida Business Corporation Act, an "affiliate" is "a person who directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, a specified person." Fla. Stat. Ann. § 607.0901 (West). While a parent corporation may have standing to bring a claim on behalf of its subsidiary, *Advanced Nano Coatings, Inc. v. Hanafin*, 478 F. App'x 838, 842 (5th Cir. 2012) ("Generally speaking, Vado, as a parent corporation to ANC, would have standing to bring suit on behalf of ANC."), the converse is not necessarily true. The Laboratories have disclosed that they are not the subsidiary of any corporation.

[5] *Loveland ex rel. Loveland v. State Farm Fire & Cas. Co.*, No. 13-20177-CIV-HUCK, 2013 WL 1325365, at *2 (S.D. Fla. Apr. 1, 2013) (Huck, J.); *Luria-Akin v. Devonshire at PGA Nat., LLC*, No. 08-80349CIV-MARRA/JO, 2008 WL 1745063, at *1 (S.D. Fla. Apr. 11, 2008) (Marra, J.); *Falin v. Condo. Ass'n of La Mer Estates, Inc.*, No. 11-61903-CV, 2011 WL 5508654, at *2 (S.D. Fla. Nov. 9, 2011) (Cohn, J.); *see also Oberschmidt v. Belile*, No. 2:12-CV-03750-AKK, 2013 WL 444334, at *2 (N.D. Ala. Feb. 5, 2013) ("[S]tanding alone, a power of attorney does not enable the grantee to bring suit in his own name.").

Haffey, Response to Motion to Dismiss, Ex. A., [ECF No. 28-2]. The Haffey Affidavit, "delegates [to the Laboratories] the authority to bring suit against [the Defendants] for reimbursement for services performed and separately billed by the [the Laboratories]." The affidavit is signed March 12, 2015. For at least two reasons the Haffey Affidavit is insufficient to confer standing upon the Laboratories.

First, Ambrosia Treatment Center cannot delegate its power of attorney. Ambrosia's authority to bring claims was authorized by the Power of Attorney that was executed by the patients. Although the Power of Attorney authorizes Ambrosia Treatment Center to delegate power to a third-party, Florida law forbids it. In Florida, a person assigned power of attorney is an agent and, "[n]otwithstanding the provision in the power of attorney, an agent who has accepted appointment . . . may not delegate authority to a third person" except for investment or government functions.[6] In fact, the Power of Attorney recognizes this statutory limitation, expressly limiting its delegation authority to "the maximum extent . . . not forbidden by law."

Second, "Article III standing must be determined as of the time at which the plaintiff's complaint is filed."[7] Plaintiff's First Amended Complaint was filed February 5, 2015. The Haffey Affidavit was signed on March 12, 2015. Even were the Halley Affidavit a conferral of standing, which it is not, it would be too late to cure the Laboratories' defective pleading:

> To hold otherwise and permit subsequent attempts to cure a standing defect, such as a later-filed assignment of rights, would unjustifiably expand the number of people who are statutorily authorized to sue . . . enmesh the judiciary in abstract

---

[6] Fla. Stat. § 709.2114(1)(b).

[7] *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003).

disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation.[8]

Because the Laboratories lack standing to bring their ERISA claims, Counts I–IV will be dismissed with prejudice.[9]

B.    BREACH OF CONTRACT

   1. COUNT V: UNITED'S BREACH OF CONTRACT WITH THE INSURED

In Count V, the Laboratories allege that United breached their insurance contracts with the patients "by failing to promptly pay, deny or contest the claims submitted by the Laboratories." 1st Am. Comp. ¶ 93. As a health care provider, the Laboratories have standing to sue as a third-party beneficiary to the contracts.[10] Although the Laboratories do not submit any contracts or contractual language that was breached, they allege the insurance contracts incorporate Florida insurance law. Specifically, the contracts incorporate Fla. Stat. § 627.6131,

---

[8] *Armor Screen Corp. v. Storm Catcher, Inc.,* No. 07-81091-CIV, 2008 WL 5746938, at *9 (S.D. Fla. Nov. 10, 2008) *aff'd*, No. 07-81091-CIV, 2008 WL 5750019 (S.D. Fla. Dec. 18, 2008).

[9] This dismissal will be with prejudice: the Laboratories were on notice of this defense from Defendants' first Motion to Dismiss, yet the Laboratories failed to cure it in their First Amended Complaint.

[10] *See Found. Health v. Westside EKG Assocs.*, 944 So. 2d 188, 197 (Fla. 2006) ("Florida law recognizes medical service providers as intended beneficiaries of insurance contracts."); *Vencor Hosps. v. Blue Cross Blue Shield of R.I.,* 169 F.3d 677, 680 (11th Cir.1999) (applying Florida law to determine that medical service providers are third-party beneficiaries to a contract between a health insurer and its subscriber); *see also Orion Ins. Co. v. Magnetic Imaging Sys. I,* 696 So.2d 475, 478 (Fla. 3d DCA 1997) ("Medical service providers ... have been recognized as third party beneficiaries of insurance contracts."). Florida Statute § 627.6131 provides for the payment of claims to providers.

which requires insurers to pay benefits after being provided written proof of loss.[11] This allegation has merit. In Florida, "where parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into their engagements with reference to such statute, and the same enters into and becomes a part of the contract."[12] The Eleventh Circuit also recognizes that state-mandated documents or provisions can be considered to have been included in the contract.[13] Accordingly, by allegedly failing to pay benefits as required, United breached their insurance contracts with the patients.

---

[11] In fact, it mandates that the contracts include this language:

> (1) The contract shall include the following provision:
>
> > Time of Payment of Claims: After receiving written proof of loss, the insurer will pay monthly all benefits then due for (type of benefit). Benefits for any other loss covered by this policy will be paid as soon as the insurer receives proper written proof.

Fla. Stat. § 627.6131(1).

[12] *Citizens Ins. Co. v. Barnes,* 98 Fla. 933, 124 So. 722, 723 (1929) (quoted in *Herrera v. JFK Med. Ctr. Ltd. P'ship*, No. 8:14-CV-2327-T-30TBM, 2015 WL 730039, at *7 (M.D. Fla. Feb. 20, 2015)). As stated by the Florida Supreme Court,

> Florida courts have long recognized that the statutory limitations and requirements surrounding traditional insurance contracts may be incorporated into an insurance contract for purposes of determining the parties' contractual rights.

*Found. Health v. Westside EKG Associates*, 944 So. 2d 188, 195 (Fla. 2006); *see also Weldon v. All Am. Life Ins. Co.,* 605 So.2d 911, 914 (Fla. 2d DCA 1992) (applying the general principle to determine the extent to which a chiropractor's services were covered under an insurance policy).

[13] *See Vencor Hospitals v. Blue Cross Blue Shield of Rhode Island*, 169 F.3d 677, 681 (11th Cir. 1999) ("One reason for considering the outline to be part of the contract is that BCBS [Blue Cross Blue Shield] was required to provide such an outline to Butler and Esposito under state law.").

Nonetheless, the Laboratories have not alleged how United's breach harmed the Laboratories. To state a claim for breach of contract, the Laboratories must allege "damages to the third party resulting from the breach."[14] The Laboratories, however, allege that they have contracted out of any damages. Each patient signed an Assignment of Benefits, conferring upon Ambrosia Treatment Center the right to receive benefits. Therefore, only Ambrosia suffered damages from United's failure to pay benefits. There is no allegation that Ambrosia Treatment Center would pay the Laboratories a portion of its received benefits, nor any arrangement which shows how the Laboratories were damaged. Because it remains insufficiently pled, Count V will be dismissed without prejudice.

 2. **COUNT VI: BREACH OF IMPLIED CONTRACT**

In Count VI, the Laboratories allege that Defendants breached an "implied contract" between the Laboratories and Defendants. The Laboratories do not clarify whether the contract is "implied in law" or "implied in fact."[15] Either way, they fail to state a claim.[16]

---

[14] *Hialeah Physicians Care, LLC v. Connecticut Gen. Life Ins. Co.*, No. 13-21895-CIV, 2013 WL 3810617, at *2 (S.D. Fla. July 22, 2013) (quoting *Found. Health v. Westside EKG Assocs.*, 944 So.2d 188, 194–95 (Fla.2006)).

[15] The Laboratories clarify that they seek a claim for "quantum meruit." But that term provides no additional guidance. For, "the term 'quantum meruit' is often used synonymously with the term 'quasi contract,' . . . used to enforce contracts implied *both* in law and in fact." *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 387 (Fla. 4th DCA 1997) (emphasis added).

[16] It may not be necessary to specify what type of implied contract is alleged. *See Jenks v. Bynum Transp., Inc.*, 104 So. 3d 1217, 1223 (Fla. 1st DCA 2012) (Thomas, J., dissenting) ("[T]he majority does not identify whether the implied contract upon which it bases its decision is a contract implied in fact—a tacit promise made by Employer—or an implied contract imposed by law.").

If the contract is "implied in law," then Laboratories fail to state a claim as a matter of law. An element of an "implied in law" contract is that "the plaintiff has conferred a benefit on the defendant."[17] However, a healthcare provider who provides services to an insured does not benefit the insurer.[18]

If the contract is "implied in fact," then the Laboratories have insufficiently pled their claim. "A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words."[19] "[C]ontracts implied in fact 'rest upon the assent of the parties.'"[20] The Court must "examine and interpret the parties' conduct to give definition to their unspoken agreement."[21]

The Laboratories must allege that they and Defendants acted as if Defendants had assented to pay for the services it performed. This the Laboratories have not done. In fact, they have alleged the opposite. The Laboratories allege that they provided services to the patients for

---

[17] *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997).

[18] *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins, Co.*, No. 13–21895–CIV, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013) (King, J.) (dismissing quantum meruit claim because medical provider "can hardly be said to have conferred any benefit, even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care services"); *Adventist Health Sys./Sunbelt Inc. v. Med. Say. Ins. Co.*, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004) (rejecting provider's unjust enrichment claim because "as a matter of common sense, the benefits of healthcare treatment flow to patients, not insurance companies").

[19] *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385 (Fla. 4th DCA 1997).

[20] *Gem Broad., Inc. v. Minker*, 763 So. 2d 1149, 1150 (Fla. 4th DCA 2000) (quoting *Commerce P'ship*, 695 So. 2d at 385).

[21] *Id.*

two years, but that Defendants made payments either inconsistently or not at all. This conduct shows that Defendants never assented to pay for the provided services. If anything, it shows they assented not to pay for them. Because the Court cannot imply a contract in fact or in law, Count VI will be dismissed without prejudice.

### 3. COUNT VII: PROMISSORY ESTOPPEL

In Count VII, the Laboratories claim promissory estoppel, alleging that they reasonably relied upon Defendants' promise that the patients' claims were covered. "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."[22] That promise must be "definite." *Id.* As alleged, Defendants made no such promise.

Affirmed by the Eleventh Circuit, Judge Gonzalez has held that an insurance company's confirmation of coverage is a representation that the patients are "covered for the *type* of treatment" proposed by the health care provider, not a definite promise to pay upon which reliance would be reasonable.[23] In the case before Judge Gonzalez, the allegations of confirmation were slightly more specific than those made here. In *Vencor*, the plaintiffs had "contacted [the insurer] to verify coverage and amounts. [The insurer] acknowledged that [the

---

[22] W.R. Grace & Co. v. Geodata Servs., Inc., 547 So. 2d 919, 924 (Fla. 1989)

[23] *See Vencor Hosps. S., Inc. v. Blue Cross & Blue Shield of R.I,* 86 F. Supp. 2d 1155, 1165 (S.D. Fla. 2000) (holding that under Florida law, a hospital could not reasonably rely on a health insurer's acknowledgment that insureds were covered for type of treatment proposed by the hospital to mean that insurer would pay the full cost of such treatment, as required to support the hospital's promissory estoppel claim against insurer), *affd sub nom., Vencor Hosps. v. Blue Cross Blue Shield of R.I,* 284 F.3d 1174 (11th Cir. 2002).

12

plaintiffs were] its insureds and that the proposed treatment . . . was covered under [the insureds'] policies."[24] But even there Defendants' promise could not support a claim for promissory estoppel.[25] Following *Vencor*, the allegations here of an indefinite confirmation of coverage will fail as well. Accordingly, Count VII will be dismissed without prejudice.

## V. CONCLUSION

For the aforementioned reasons, it is hereby

**ORDERED** and **ADJUDGED** that:

1. Counts I–IV (ERISA) are **DISMISSED WITH PREJUDICE**.

2. Count V–VIII (Breach of Contract) are **DISMISSED WITHOUT PREJUDICE**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 11th day of May, 2015.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*

---

[24] *Id.* at 1164.

[25] *Id.*; *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989) (requiring promise to be "definite").