UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-81271-CV-HURLEY/HOPKINS

PEACOCK MEDICAL LAB, LLC,
PBL MEDICAL, LLC, and LAKE
DRIVE MEDICAL, LLC,

      Plaintiffs,

v.

UNITEDHEALTH GROUP, INC.,
UNITED HEALTH CARE SERVICES,
INC., OPTUMINSIGHT, INC., and
OPTUMHEALTH, INC.,

      Defendants.
_____/

### ORDER FOR MORE DEFINITE STATEMENT AND TO SHOW CAUSE, AND NOTICE OF INTENT TO CONVERT MOTION TO DIMSISS TO MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon the Defendants' (UnitedHealth Group, Inc.; United Healthcare Services, Inc.; OptumInsight, Inc.; and OptumHealth, Inc.) Motion to Dismiss [ECF No. 43] Plaintiffs' (Peacock Medical Lab, LLC; PBL Medical, LLC; and Lake Drive Medical, LLC) Second Amended Complaint [ECF No. 42].

### LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When alleging "fraud or mistake, party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The allegations in the complaint "read in the light most favorable to the plaintiffs."  *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir.1992).  Exhibits attached to the complaint are "part of the pleading[] for all purposes."  *Soliz-Ramiez v. U.S. Dep't of Justice,* 758 F.2d 1426, 1530 (11th Cir. 1985).

## I.      BACKGROUND

Ambrosia Treatment Center, the trade name of RMP Enterprises, LLC, treats substance abuse patients in Florida.  2d Am. Comp. ¶ 12.  One hundred thirty-two of Ambrosia's patients had health care plans administered and "insured" by the Defendants.  *Id.* ¶¶ 2, 12, 14–18, 20, & 22.  These patients have signed an Assignment of Benefits with Ambrosia, assigning to Ambrosia the right to receive the benefits under their plans for the services it provides.  *Id.* ¶ 30.  The Plaintiffs, collectively "the Laboratories," are "affiliates" of Ambrosia.  *Id.* ¶¶ 9–12.

From 2013 to 2014, the Laboratories administered urinalysis tests to Ambrosia's patients.  *Id.* ¶ 32.  Ambrosia agreed to pay to the Laboratories the benefit payments it received for tests.  *Id.* ¶ 13.  Before providing services to each patient, the Laboratories "verified the existence of coverage" with the Defendants, who "confirmed coverage" and that the Laboratories' claims "would be paid when timely submitted."  *Id.* ¶33.  As to the patients, the Laboratories are out-of-network providers.  *Id.* ¶ 13.

For almost two years, the Laboratories timely submitted claims with the Defendants.  *Id.* ¶¶ 26, 38.  Some of the claims were paid, but others were delayed or denied.  *Id.* ¶ 34–36.  The

Defendants would make requests upon the Laboratories, such as providing documentation of physician and laboratory licensure, with the assurance of payment for unpaid claims upon their receipt.  ¶¶ 34, 37.  Yet as soon as the Laboratories fulfilled one request, the Defendants would make another.  *Id.*

The Laboratories spoke to the Defendants by telephone on September 24, 2014 about pending unpaid claims.  *See* E-mail from Nichole Geary, Attorney, Broad & Cassel, to Carolyn P. Ham, Associate General Counsel, Optum (Sept. 25, 2014, 10:38 AM), 2d Am. Comp., Ex. F. The next day, the Laboratories e-mailed the Defendants with the Laboratories' certifications and the licensure of Dr. Paul Rodriguez', the prescribing doctor, "trust[ing] this documentation should suffice to conclude your [the Defendants'] investigation into the unpaid claims." *Id.*  The Laboratories hoped that the Defendants would "allow this correspondence to serve as confirmation that the Laboratories do not need to continue to submit appeals for the unpaid claims and that future claims for the Laboratories will be released." *Id.*

On October 6, 2014, the Laboratories emailed the Defendants to remind them that claims remained unpaid, and that they were prepared to file suit.  *See* E-mail from Nichole Geary, Attorney, Broad & Cassel, to Carolyn P. Ham, Associate General Counsel, Optum (Oct. 6, 2014, 1:23 PM) (stating that "contrary to our telephone discussion of this issue on September 24, 2014, new claims continue to be returned unpaid"), Counsel for 2d Am. Comp., Ex. G.  In response, Ms. Ham wrote that "I can tell you that we removed the review of Dr. Paul Rodriguez's claims just last week so your client should see that claims are processed without a request for medical records after 10/1/2014."  E-mail from Carolyn P. Ham, Associate General Counsel, Optum, to

Nichole Geary, Attorney, Broad & Cassel, to (Oct. 6, 2014, 2:29 PM), Counsel for 2d Am. Comp., Ex. G.

As of the filing date, almost $2,000,000 of claims remain unpaid.  2d Am. Comp. ¶ 30. The Laboratories provide a charting listing each patient with his or her date of treatment, treatment code, patient identification number, and policy number.  2d Am. Comp. *Id.* ¶ 30; ex. B.

## II.  PROCEDURAL HISTORY

On October 15, 2014, the Laboratories filed their first Complaint, the Defendants moved to dismiss, and the Court granted the Laboratories leave to amend.

The Laboratories then filed their Amended Complaint, alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. ch. 18, and state law claims of breach of express contract, breach of implied contract, and promissory estoppel.  The Court dismissed the ERISA claims with prejudice for lack of standing.  The Court dismissed the state law claims without prejudice for failure to state a claim.

The Laboratories have now filed their Second Amended Complaint ("the Complaint"). They re-plead their claims for breach of express contract (Count I), breach of implied-in-fact contract (Count I and II), and promissory estoppel (Count III), and add a claim for negligent misrepresentation (Count IV).

The Defendants move to dismiss, arguing that ERISA preempts, and res judicata bars,[1] the Laboratories' claims.

---

[1] According to the Defendants, because the Laboratories' ERISA claims were dismissed with prejudice for lack of standing, the Laboratories are barred by res judicata from bringing their "transmogrified" state law claims.  Defs.' Mot. to Dismiss at 6 (quoting *McLemore v. Regions Bank*, 682 F.3d 414, 426 (6th Cir. 2012)).  The doctrine of res judicata is inapplicable, for it applies only judgments "in a *prior suit.*"  *E.g., Certex USA, Inc. v. Vidal*, 706 F. Supp. 2d 1291, 1294 (S.D. Fla.. 2010) (Moore, J.) (emphasis added).  Although the Laboratories may be estopped from litigating decided issues, *Madura v. Countrywide Home Loans, Inc.*, 344 F. App'x 509, 518 & n.3 (11th Cir. 2009),

### III.   DISCUSSION

#### A.   ERISA PREEMPTION

The Employee Retirement Income Security Act of 1974 (ERISA) regulates "employee benefit plans," such as pension and health insurance plans, by imposing fiduciary duties upon plan administrators. 29 U.S.C. §§ 1104, 1002(1), (3); *see Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996). The purpose of ERISA is "to provide a uniform regulatory regime" over such plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To affect its purpose, ERISA contains an express preemption, or "supersedure," provision. 29 U.S.C. § 1144. Under this provision, ERISA preempts state laws that "relate to" employee benefit plans. 29 U.S.C. § 1144(a). State law includes statutory, regulatory, and common law. 29 U.S.C. § 1144(c)(1). Express preemption, otherwise known as "defensive" preemption,[2] is an affirmative defense. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999). A state law that relates to an employee benefit plan may be saved from preemption if it is one "which regulates insurance."

---

they are not barred from bringing their claims. In *McLemore*, 426 F.3d at 427–28, whether a plaintiff had "transmogrified" its ERISA claims into state law claims was relevant to the issue of preemption, not res judicata, which was never discussed.

[2] Defensive preemption is "broader" than the related, but inapplicable, doctrine of "complete preemption" the parties intermittently discuss. *See Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1281 (11th Cir. 2005). The doctrine of complete preemption provides federal removal jurisdiction for a state law claim by converting into a federal claim. *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851 (11th Cir. 1999). The doctrine arises "when the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim." *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009) (internal quotation marks and citations omitted). ERISA is one such statute. *Id.* For a state law claim to be completely preempted, the plaintiff must have had standing to bring an ERISA claim. *Id.* at 1450. In its previous motion to dismiss, Defendants argued that Plaintiffs lacked standing under ERISA. The Court agreed: writing "the Laboratories lack standing to bring their ERISA claims." *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-81271-CV, 2015 WL 2198470, at *4 (S.D. Fla. May 11, 2015) (Hurley, J.). Therefore, even were jurisdiction an issue, ERISA would not completely preempt the Laboratories' claims.

29 U.S.C. § 1144(b)(2)(A).  When determining if a state law is preempted, "[t]he purpose of Congress is the ultimate touchstone." *Pilot Life Ins. Co. v. Deadeaux*, 481 U.S. 41, 45 (1987).

## 1.   "RELATES TO"

A state law "relates to" an employee benefit plan, and therefore is preempted by ERISA, "if it has a connection with or reference to such [a] plan." *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1330 (11th Cir. 2014) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)).  This occurs "whenever the alleged conduct at issue is intertwined with the refusal to pay benefits."  *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997). If a health care provider sues a plan administrator, ERISA preempts those claims that are "based upon the failure of a covered plan to pay benefits," *Variety Children's Hosp., Inc. v. Century Med. Health Plan*, 57 F.3d 1040, 1042 (11th Cir. 1995), "center on the issue of coverage under the plan," *id.*, or are "based on an interpretation of the plan's terms," *Morstein v. Nat'l Ins. Servs., Inc.*, 93 F.3d 715, 723 (11th Cir. 1996) (en banc).  In contrast, ERISA does not preempt claims that "involve[] the reliance on an insurer's promise that a particular treatment is fully covered under a policy." *Id.*; *Variety*, 57 F.3d at 1043 n.5 (emphasizing "fully covered").  A court must look to the complaint to see what a plaintiff "really" claims, *see Variety*, 57 F.3d at 1043 (finding that the claim was "not really that [the plaintiff] relied upon [the plan administrator's] promise, but that . . .  the plan covered the treatment."), yet remain mindful not to "elevate form over substance," *see Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 (11th Cir. 2009) (opining that "merely referring to labels affixed to claims to distinguish between preempted and non-preempted claims is not helpful because doing

so "would 'elevate form over substance and allow parties to evade' the pre-emptive scope of ERISA.") (quoting *Davila*, 542 U.S. at 214))..

### a.     THE LABORATORIES' CLAIMS

Discussed more specifically below, in general the Laboratories' claims in this case relate to the employee benefit plans.  In general, "the alleged conduct at issue is intertwined with the refusal to pay benefits," *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997).  The Laboratories introduce their Complaint as follows:  "This action seeks recovery of covered *benefits* from the Defendants relating to drug screening urinalysis testing."  2d Am. Comp. ¶ 1 (emphasis added).  Likewise, the Laboratories claims "center on the issue of coverage under the plan," *Variety Children's Hosp., Inc. v. Century Med. Health Plan*, 57 F.3d 1040, 1042 (11th Cir. 1995). They begin their General Allegations as follows:  "[The] Defendants have improperly denied *coverage* for services provided by Plaintiffs, under state law."  *Id.* ¶ 25 (emphasis added).  Finally, the Laboratories' claims are "based upon the failure of a covered plan to pay benefits," Variety, 57 F.3d at 1042..  The Laboratories allege "[t]he drug screening services provided by the Laboratories were *covered benefits* pursuant to the United Plans," 2d Am. Comp. ¶ 27, attach the Defendants' "Coverage Determination Guideline" to the Complaint, and allege the urinalyses were "medically necessary," *id.* ¶ 37.  *See Variety*, 57 F.3d at 1042 (finding that an allegation that treatment was "medically necessary" was "really" a claim that it was "not experimental, and the plan covered the treatment").

### i.     COUNT I: BREACH OF CONTRACT

Count I, breach of contract, clearly relates to the plans.  The Laboratories claim they are third-party beneficiaries to the contracts, or plan policies, between the Defendants and the

patients.  2d Am. Comp. ¶¶ 43–51.  Such claims for breach of contract would necessarily be "based on an interpretation of the plan's terms," *Morstein v. Nat'l Ins. Servs*., Inc., 93 F.3d 715, 723 (11th Cir. 1996) (en banc).  Even were they not, the Eleventh Circuit "ha[s] consistently held that ERISA preempts state law breach of contract claims."  *Swerhun v. Guardian Life Ins. Co. of Am.*, 979 F.2d 195, 198 (11th Cir. 1992).

### ii.    COUNT II: BREACH OF IMPLIED CONTRACT

Count II, breach of implied contract, also relates to the plans.  The Laboratories allege that they and the Defendants entered into an implied agreement to pay the Laboratories' claims. *Id.* ¶¶ 52–55.  A claim for a breach of an implied in fact contract need not necessarily "relate to" plan, as it may claim a breach of an "agreement independent of the patients' ERISA benefit plans."  *See Sheridan Healthcorp., Inc. v. Neighborhood Health P'ship, Inc.*, 459 F. Supp. 2d 1269, 1273 (S.D. Fla. 2006) (Altonaga, J.).  Nonetheless, the Laboratories do not really make that claim.  Instead, they incorporate the General Allegations, and allege that the Defendants' breached their implied in fact contract by failing to pay for the "covered services" and the patients' "Claims."  2d Am. Comp. ¶ 54.  This claim, "based upon the failure of a covered plan to pay benefits," relates to the plans.  *See Variety Children's Hosp., Inc. v. Century Med. Health Plan*, 57 F.3d 1040, 1042 (11th Cir. 1995).

### iii.    COUNTS III AND IV:    PROMISSORY ESTOPPEL AND NEGLIGENT MISREPRESENTATION

The Court cannot decide whether Count III, promissory estoppel, or Count IV, negligent misrepresentation, relate to the plans because neither claim is sufficiently pled.  Negligent misrepresentation "sounds in fraud" and must be alleged with "particularity" under Fed. R. Civ.

P. 9(b).  *See McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829, 831 (11th Cir. 2013).  So

too may claims for promissory estoppel.  *See MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F.

Supp. 2d 1346, 1360 n.10 (S.D. Fla. 2000) (Gold, J.) (applying Rule 9(b) to a claim for

promissory estoppel); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949 (7th Cir. 2013)

(applying Rule 9(b)  to a claim for promissory estoppel when it sounded in fraud).  Rule 9(b)

requires a plaintiff to plead the following:

> (1) precisely what statements or omissions were made in which documents or oral
> representations; (2) the time and place of each such statement and the person responsible
> for making (or, in the case of omissions, not making) them; (3) the content of such
> statements and the manner in which they misled the plaintiff; and (4) what the defendant
> obtained as a consequence of the fraud.

*McGee*, 520 F. App'x at 831.

The  purpose  of  the  particularity  requirement  is  to  provide  defendants  notice  of  the

"precise misconduct" with which they are charged.  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194,

1202 (11th Cir.2001).  This requirement applies to cases, such as this, in which the evidence of

fraud is not "exclusively within the defendant's possession."  *See Hill v. Morehouse Med. Ass's,*

*Inc.*, No. 02-14429, 2003 WL 22019936, at *4 (11th Cir. Aug. 15, 2003) ("Rule 9(b)'s pleading

standard  may  be  relaxed  when  evidence  of  the  fraud  is  exclusively  within  the  defendant's

possession .").  The Laboratories should have knowledge of each promise or representation made

by the Defendants, as they were made *to* the Laboratories.  The requirement for particularity

does not require the Laboratories to allege every precise statement:  when the fraud occurs over a

"period of time," it may be sufficient to "set forth a representative sample detailing the

defendants allegedly fraudulently acts, when they occurred, and who engaged in them."  *Id.*, at

*5 (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 131 (11th

Cir.2002)) (internal quotation marks and alterations removed).   Nonetheless, in this case, the Laboratories have failed to fulfill these minimal requirements:

## 1.   NEGLIGENT MISREPRESENTATION

In their claim for negligent misrepresentation, the Laboratories allege broadly that "[a]t the times the Laboratories sought information concerning the scope of coverage, benefits, and availability of benefits for the urinalysis services, the Defendants negligently misrepresented to the Laboratories the scope, coverage, and availability of benefits for the urinalysis services."  2d Am. Comp. ¶ 65.  Although the Laboratories' incorporate the Complaint's General Allegations by reference, nowhere else does the Complaint particularize these "times" and this "information."   Throughout the Complaint, the Laboratories passively allege the "times" or "each time" or the "alternate times" a misrepresentation was made.  *Id.* ¶ 33.[3]  Furthermore, the Laboratories describe the misrepresentations in general terms, such as "the Defendants indicated they would honor [a request] when satisfied." *Id.*; *see infra* note 4.  These ambiguous allegations are insufficient.

To state a claim for negligent misrepresentation that complies with Rule 9(b), the Laboratories must instead "assert the date," the "method of communication," the "specific content" of the communication and, when possible, "specific quotations."  *See Platinum Estates,*

---

[3] 2d Am. Comp. ¶ 33 ("Prior to providing medical services to United's participants, the Laboratories verified the existence of coverage.  United and Optum confirmed coverage and that Plaintiffs [sic] Claims would be paid when properly submitted."); *id.* ¶ 34 ("[F]or those Claims that United and Optum ultimately requested additional information, the Laboratories timely provided such information and documentation, multiple times, but Defendants still failed to pay most of the Claims."); *id.* ¶ 37 ("Each time the Laboratories would address an investigation request and provide affirmative documentation to support payment (which Defendants indicated they would honor when satisfied), Defendants would concoct yet another basis for their 'investigation' regarding an entirely different issue and reason for non-payment."); *id.* ("At alternate times, the Plaintiffs were informed by the Defendants the Claims were denied due to the expiration of the license of the prescribing physician.  When Defendants provided documentation as to the validity of the physician's license, and believed payment would then be made based upon the Defendants' prior representations, the purported denial reason changed to the lack of proper laboratory licensing.").

*Inc. v. TD Bank, N.A.*, No. 11-60670-CIV, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012) (Marra, J.) (applying Rule 9(b) to negligent misrepresentation).  While the Laboratories' claim that the Defendants misrepresented the "scope, coverage, and availability of benefits" may relate to a plan, as it "center[s] on the issue of coverage under the plan," *Variety*, 57 F.3d at 1042, the Court cannot decide this issue until the claim is alleged more fully.  *Compare Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir. 1994) (misrepresentation that services not preempted) *with Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 & n.5 (11th Cir. 1995) (misrepresentation claim preempted); *see generally Morstein v. Nat'l Ins. Servs., Inc.*, 93 F.3d 715, 723 (11th Cir. 1996) (en banc) (comparing claims "based on an interpretation of the plan's term," which would be preempted," with a claim that "involves the reliance on an insurer's promise that a particular treatment is fully covered under a policy," which would not).

## 2.    PROMISSORY ESTOPPEL

The Laboratories' promissory estoppel claim alleges that (1) the Defendants promised payment when they confirmed coverage, 2d. Am. Comp. ¶ 33, and that (2) the Defendants promised to pay the unpaid claims once they resolved any issues, *id.* ¶ 58.[4]

Under promissory estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-81271-CV, 2015 WL

---

[4] The Defendants may make a third allegation:  "Indeed, in reliance upon United's *continuing the payment process by not denying the Claims*, the Laboratories continued to provide services to United insureds."  2d Am. Comp. ¶ 58 (emphasis added).  This statement may be allegation of reliance upon a promise, or it may be an allegation of an implied promise to pay.  If it is the latter, then it must be "clearly implied."  *Waterfront Properties, Inc. v. Coast To Coast Real Estate, Inc.*, 679 So. 2d 48, 49 (Fla. 4th DCA 1996) (Gross, J., dissenting).

2198470, at *5 (S.D. Fla. May 11, 2015) (Hurley, J.) (quoting *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So.2d 919, 924 (Fla.1989)).  The promise must be "definite," *id.*, and the reliance upon it "reasonable," *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 650 (Fla. 3d DCA 2006).

**a.     CONFIRMATION OF COVERAGE**

The Court previously dismissed the first allegation, that the Defendants promised payment when they confirmed coverage, explaining that "the allegations here of an indefinite confirmation of coverage" are insufficient to allege the "definite" promise required for a promissory estoppel claim.  *Peacock*, No. 14-81271-CV, 2015 WL 2198470, at *5.  Despite this dismissal, the Laboratories provide no additional allegations.  The Court cited *Vencor Hospitals S., Inc. v. Blue Cross & Blue Shield of Rhode Island*, 86 F. Supp. 2d 1155 (S.D. Fla. 2000) *aff'd sub nom. Vencor Hospitals v. Blue Cross Blue Shield of Rhode Island*, 284 F.3d 1174 (11th Cir. 2002), in the health care provider alleged that the insurer "acknowledged . . . that the proposed treatment . . . was covered."  While the Laboratories may sufficiently allege that the Defendants confirmed the "type of treatment" that would be covered, *id.*, they make no allegation as to the amount of reimbursement.[5]  Accordingly, the Court cannot rule on the issue of preemption until the Laboratories' allegations are more particularly pled.  If what the Defendants did say is that the patients' claims would be paid when timely submitted, the claim for promissory estoppel may be preempted by ERISA, as the Laboratories' claims would be based upon a failure to pay

---

[5] Their reliance, then, would be reasonable only to the extent of the meaning of the Defendants' representation "that Plaintiffs['] Claims would be paid when timely submitted."  2d Am. Comp. ¶ 33; *see* Vencor, 284 F.3d at 1185 (finding that because the health care provider "allege nothing about statements regarding the costs of . . . treatment . . . [the] promissory estoppel claim goes only to types of treatment").

benefits, that is, their claim "is not *really* that [the Laboratories] relied upon [the Defendants']
promise, but that . . . the plan covered the treatment." *Variety Children's Hosp., Inc. v. Century
Med. Health Plan*, 57 F.3d 1040, 1042 (11th Cir. 1995) (emphasis added). By contrast, if the
Defendants said that the claims were "fully covered under the policy" then the claim for
promissory estoppel may not be preempted, *Morstein v. Nat'l Ins. Servs., Inc.*, 93 F.3d 715, 723
(11th Cir. 1996); *Variety Children's Hosp., Inc. v. Century Med. Health Plan*, 57 F.3d 1040,
1043 n.5 (11th Cir. 1995) ("[W]here an insurer represents to the health care provider that a
specific treatment is fully covered under the policy and only after lengthy and expensive
treatment informs the provider that the policy contains a significant limitation on that coverage, .
. . the claim for promissory estoppel would be unrelated to the benefits under the plan and would
survive the defense of preemption.) (citing *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529
(11th Cir. 1994)). The Court presently declines to decide this issue as it cannot construe who
said what to whom and when.

**b.      PROMISE TO PAY AFTER RESOLVING ISSUES**

To support its second allegation, that the Defendants promised to pay the unpaid claims
once they resolved any issues, the only precise statement that the Laboratories allege is contained
within an email from Carolyn Ham, Associate General Counsel at Optum, dated October 6,
2014, responding to an inquiry from the Laboratories as to why their claims remain unpaid. Ms.
Ham writes only that "I can tell you that we removed the review of Dr. Paul Rodriguez's claims
just last week so your client should see that claims are processed without a request for medical
records after 10/1/2014." E-mail from Carolyn P. Ham, Associate General Counsel, Optum, to
Nichole Geary, Attorney, Broad & Cassel, to (Oct. 6, 2014, 2:29 PM), Counsel for 2d Am.

Comp., Ex. G.  If, viewed in the light most favorable to the Laboratories, Ms. Ham's statement is a definite promise to pay future claims, then no detrimental reliance could have occurred until after it was made.  But for any previous detrimental reliance, there must have been a definite promise.  As with Count IV, negligent misrepresentation, the Laboratories incorporate the general allegations of the Complaint, but these provide no more particularity.  The Laboratories allege the "times" or "each time" or the "alternate times" a vaguely worded promise made.  *Id.* ¶ 33; *see infra*, note 4.  An allegation of a definite promise requires more.

## iv.    MORE DEFINITE STATEMENT

The Defendants do not move to dismiss Counts III and IV for failure to plead with particularity.  Nevertheless, the Court has the inherent authority to *sua sponte* enter an order for a more definite statement under Fed. R. Civ. P. 12(e).  *See e.g, Fikes v. City of Daphne*, 79 F.3d 1079, 1081 n.6 (11th Cir. 1996).  Failure to plead a claim with particularity can be cured through a more definite statement.  *In re Mart*, 90 B.R. 556, 559 (Bankr. S.D. Fla. 1988) ("When there is no pleading deadline, the purpose of Rule 9(b) may be served by requiring or permitting a more definite statement.").  Therefore, the Court will *sua sponte* order the Laboratories to plead Counts III and IV with particularity, within ten days, under Federal Rule of Civil Procedure 9(b).  *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008) (If the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.").

2.      **SAVING AND DEEMER CLAUSE**

There are two types of employee benefit plans: "self-funded" and "insured."  A "self-funded" plan is one in which "employers pay the plan members' claims." *America's Health Ins. Plans v. Hudgens*, 915 F. Supp. 2d 1340, 1324 (N.D. Ga. 2012) *aff'd*, 742 F.3d 1319 (11th Cir. 2014) (describing a self-funded plan as one in which  "the employer bears the ultimate risk").  A "insured" plan is one in which "employers purchase a health insurance policy to cover the plan's members." *America's Health Ins. Plans v. Hudgens*, 915 F. Supp. 2d 1340, 1324 (N.D. Ga. 2012) *aff'd*, 742 F.3d 1319 (11th Cir. 2014) (defining an insured plan as one in which "the employers contract with insurance companies to provide health insurance.").

ERISA preempts only state laws that relate to self-funded plans.  This difference arises from ERISA's *saving* and *deemer* clause.  ERISA's savings clause saves from preemption state laws "which regulate[] insurance."  29 U.S.C. § 1144(b)(2)(A).  State laws which regulate insurance can include common law contract and tort law.  *See Pilot Life Ins. Co. v. Deadequx*, 481 U.S. 41 (1987) (considering a tort claim emphasizing "that the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans'") (quoting *Shaw v. Delta Air Lines*, 463 U.S. 97, 98 (1983)).  ERISA's deemer clause "deem[s]" employee benefit plans not to be "'engaged in the business of insurance'" for state laws "'purporting to regulate insurance.'"  *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) (quoting 29 U.S.C. § 1144(b)(2)(B)).  Because employee benefit plans are not deemed to be engaged in insurance, laws which regulate them are not saved from preemption.  *See id.*  ("By forbidding States to deem employee benefit plans "to be an insurance company or other insurer ... or to be engaged in

the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance.") (quoting 29 U.S.C. §1144).

States may not directly or indirectly regulate self-insured plans. *See Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 747 (1985) (approving "a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not"). But they may indirectly regulate insured plans. *See Hudgens*, 742 F.3d at 1333 ("[I]f a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured [or self-funded], the State may not regulate it.") (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 65 (1990)) (alteration in original). ERISA does not preempt state law claims that relate to insured plans. "[T]his fact is critical for purposes of § 1144(a)." *See e.g. Light v. Blue Cross and Blue Shield of Ala., Inc.*, 790 F.2d 1247, 1248 n.3 (5th Cir. 1989) (considering preemption of state law claims for intentional and negligent infliction of emotional distress and when the plaintiffs conceded the plan was "self-insured.").

**b.   PLANS IN THIS CASE**

Were the Court to decide that the Laboratories' claims related to the employee benefit plans, it would then have to decide whether the claims were saved from preemption. *See Am.'s Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1332 (11th Cir. 2014) (considering whether a law regulated self-funded or insured plans after having found that the law "relate[d] to" an employee benefit plan). If the plans were self-funded, the claims would be preempted; if the plans were insured, the claims would not be preempted.

In this case the Laboratories allege that the patients' employee benefit plans are insured. 2d Am. Comp. ¶ 22. They do not know for sure, because the Defendants have denied or ignored

their requests for the plan documents.  *See* 2d Am. Comp., Ex. D., Letter from Mark R. Osherow, Broad and Cassel, to Shari Gerson, Gray Robinson, P.A. (Dec. 31, 2014).  This, however, was the Defendants' right: "[a]n administrator is under no obligation to disclose plan documents to third parties without written authorization from participant or beneficiary."  *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*, No. 10-81589-CIV, 2013 WL 149356, at *11 (S.D. Fla. Jan. 14, 2013) (Hurley, J.) (citing *Bartling v. Fruehauf Corp.*, 29 F.3d 1062 (6th Cir.1994)).  Nonetheless, the Defendants wish to rely upon ERISA preemption as a defense, providing two plan documents as a "sampling," and offering to "file additional plans [sic] documents at this Court's request."  Defs.' Reply at 7.

## 2. SUMMARY JUDGMENT

To resolve the issue of preemption, the Court must convert the Defendants' Motion to Dismiss into one for summary judgment.  A court may not consider exhibits attached to a motion to dismiss without converting it into a motion for summary judgment unless the exhibits are "central to the plaintiff's claim" and "undisputed."  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  In this case, the Laboratories dispute the attached policies, and for good reason.  The policies' authenticity is not sworn to, nor do the policies reference any particular patient.  In fact, they may be irrelevant to the present case.  To consider the attached and any additional documents, the Court will convert the Defendants' Motion to Dismiss into a motion for summary judgment.  *See Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir.1987) (requiring the court to provide notice to a to convert a motion to dismiss to one for summary judgment).

**B.      FAILURE TO JOIN PARTIES**

The Laboratories may have failed to join Ambrosia and the patients as the real parties in interest, necessary parties, or both.

**1.      REAL PARTIES IN INTEREST**

Under Federal Rule of Civil Procedure 17(a)(1), "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  The Laboratories' claims, at least in Counts I and II, are based upon a failure of a covered plan to pay benefits.  The patients are the assignors of those benefits, and the Laboratories are out-of-network providers.  "If a patient receives treatment at an out-of-network [provider], the patient is usually responsible for paying much or all of the cost directly to the treating [provider]."  *Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1300 (11th Cir. 2010).  For that reason, this Court has held in a not dissimilar case that when patients "are charged with full responsib[ility] for the underlying medical bills regardless of the outcome of the insurance claim, there is at least a suggestion that the patient/assignors necessarily retain an interest in these claims and are additional real parties in interest to this litigation."  *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*, No. 10-81589-CIV, 2013 WL 149356, at *7 (S.D. Fla. Jan. 14, 2013) (Hurley, J.).  In this case, with $2,000,000 unpaid claims and 132 patients, each patient may be responsible for more than $15,000 in urinalysis costs alone.  Many of these patients likely assumed that the urinalysis was included within the cost of their substance abuse treatment, and likely could not predict they would be referred to "affiliate" out-of-network laboratories, only to later be left with the bill.  The potential that they be responsible for payment may make the patients additional real parties in interest to this action.

### 2.      REQUIRED PARTIES

Under Federal Rule of Civil Procedure 19(a)(1), a party is "required" if it "claims an interest relating to the subject matter of the action" and its absence may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii).  Both Ambrosia, as assignee of benefits, and the patients, as assignors, claim an interest in unpaid benefits.  And both may have a claim for benefits against the Defendants under ERISA's civil enforcement provision, § 502(a), codified at 29 U.S.C. § 1132.  *See Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1347 (11th Cir. 2009) ("Claims for benefits by healthcare providers pursuant to an assignment are thus within the scope of § 502(a).  If successful under ERISA, their "[r]elief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987).  If what the Laboratories seek are unpaid benefits, then Ambrosia and the patients may be able to recover for the same cause of action and the same incident, putting the Defendants at risk of "double liability." *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1040 (11th Cir. 2014) ("[W]here two suits arising from the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages.").  This risk may make both Ambrosia and the patients required parties to this action.

### 3.      SHOW CAUSE

Since the patients may be the real parties in interest, the Court must allow them "to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).  And since Ambrosia and the

patients may be required parties, the Court must "order that the person be made a party." Fed. R. Civ. P. 19(a). Accordingly, the Court will order, as specified below, the Laboratories to show cause, if any there be, as to why the Court should not order the joinder of the patients real parties in interest or required parties, or order Ambrosia to be joined as a required party.

### <u>CONCLUSION</u>

For the aforementioned reasons, it is hereby

**ORDERED** and **ADJUDGED** that:

1. The Plaintiffs **SHALL FILE** a Third Amended Complaint within **TEN (10) DAYS** from the date this Order is entered.

   a. With their Third Amended Complaint, Plaintiffs **SHALL FILE** a separate statement of cause, if any there be, as to why the Court should not:

      i. Order the joinder of the patients as real parties in interest under Fed. R. Civ. P. 17.

      ii. Order the joinder of RMP Enterprises, LLC, doing business as Ambrosia Treatment Center, under Fed. R. Civ. P. 19.

2. The Defendants' Motion to Dismiss [ECF No. 43] **SHALL BE** converted to a "Motion for Summary Judgment."

   a. The parties shall have **FOURTEEN (14) DAYS** from the date of service of Plaintiffs' Third Amended Complaint within which to conduct discovery on the issue of whether the plans are self-funded or insured.

    b.  The Defendants shall have **TEN (10) DAYS** from the close of discovery within which to file a supplemental memorandum of law, with evidence, in support of their Motion for Summary Judgment.

    c.  The Plaintiffs shall have **SEVEN (7) DAYS** from filing to file their Response.

    d.  The parties **SHALL NOT FILE** any additional memoranda on this issue without leave of the Court.  Both parties are specifically advised of their right to file affidavits, sworn testimony, or other affidavits, in support of their briefs.

    **DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 1st day of September, 2015.

Daniel T. K. Hurley
United States District Judge

21